CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 27 2006

JOHN F. CORCORAN, CLERK
BY:
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GAIL ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:05CV225 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) By:   Hon. Michael F. Urbanski |
| | )          United States Magistrate Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Gail Ross ("Ross") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is now before the court on cross motions for summary judgment. Having reviewed the record and after briefing and oral argument, the case is now ripe for decision. Because the Commissioner's decision was supported by substantial evidence and was legally correct, defendant's motion for summary judgment must be granted and this appeal dismissed.

I

Plaintiff was born on October 30, 1957 and has a high school education. (Administrative Record, hereinafter "R." at 18, 642) Plaintiff last worked on August 26, 2000 at the Boy's Home in Covington, and had previously worked as a nurse's aide, store clerk and phlebotomist. (R. 175, 203)

Plaintiff filed an application for DIB on August 23, 2001, alleging she became disabled on August 26, 2000 due to cervical and lumbar disc injuries, myofacial pain syndrome, chronic fatigue syndrome, depression and recurrent headaches. (R. 126-128) Plaintiff's application for Social Security benefits has been the subject of two administrative hearings and decisions by the Social Security Administration Office of Hearings and Appeals. The first administrative hearing was held on March 26, 2003, and the decision of the Administrative Law Judge ("ALJ") was rendered on May 8, 2003. Following an administrative appeal, on January 29, 2004, the Appeals Council remanded the case to the ALJ for further consideration of certain issues. The ALJ conducted a supplemental administrative hearing on June 17, 2004, and issued a second decision on June 27, 2004. The Appeals Council denied the plaintiff's subsequent request for review on March 4, 2005, and this suit was instituted challenging the agency's denial of disability insurance benefits.

## II

Ross raises three issues on appeal. First, Ross argues that the Commissioner did not properly evaluate her carpal tunnel condition. Second, Ross argues that the ALJ's assessment of her residual functional capacity ("RFC") for light work is overstated. Finally, Ross argues that the ALJ improperly applied the Medical-Vocational Guidelines to reach a finding that she was not disabled.

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

2

Case 7:05-cv-00225-mfu  Document 24  Filed 02/27/06  Page 2 of 14  Pageid#: 87

1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III

Plaintiff's principal contention on appeal is that "the ALJ erred in failing to find the plaintiff's bilateral carpal tunnel syndrome to be a severe impairment during the relevant time period . . . . In fact, the ALJ failed to even acknowledge or evaluate this condition at all, which is obvious from the record." (Pl.'s Br. 11-12) On the contrary, the record reflects that the ALJ exhaustively considered the evidence of plaintiff's claimed impairments to her wrists in determining her residual functional capacity, and substantial evidence exists to support this aspect of the ALJ's decision.

Plaintiff's application for DIB claims disability as of August 26, 2000, on the basis of cervical, thoracic and lumbar disc injuries, myofacial pain syndrome and chronic fatigue syndrome. (R. 145) She makes no mention of carpal tunnel. Instead, plaintiff indicated that she could not work as she was "unable to stand, walk or sit for any amount of time without pain, continuous use of arms and hands, whiplash injuries involving neck and shoulders, left leg from standing, [and] severe cervical headaches." (R. 145) Plaintiff testified that she injured her back lifting a case of beer while working at a convenience store in the early 1990s, followed by a motor vehicle accident in 1992. (R. 647-48)

While working at the Boy's Home in Covington on August 26, 2000, plaintiff injured her right wrist, shoulder and elbow when she was thrown against a wall while trying to break up a

3

fight. (R. 298) Plaintiff was treated for a severe sprain/contusion of the right wrist and for neck pain at Alleghany Regional Hospital on the date of the injury, and then by Dr. Robert S. Widmeyer at Roanoke Orthopedic Center on September 14, 2000. X-rays revealed no wrist fracture, and plaintiff was diagnosed with a significant sprain of her neck and a severe sprain/contusion of her right wrist. (R. 364) Dr. Widmeyer noted at a December 13, 2000 visit that plaintiff "continues to have significant chronic pain from her on-the-job injuries," (R. 361), and referred her to Dr. Cyrus Bakhit for chronic pain management. No mention of any wrist complaint appears in Dr. Widmeyer's note of December 13, 2000.

On March 12, 2001, Dr. Richard R. Eckert performed an independent medical evaluation ("IME") on plaintiff. At that time, her chief complaints were right non-dominant wrist pain and right and left neck pain. (R. 320) Dr. Eckert attributed both her wrist and neck pain to the Boy's Home incident and opined that "[h]er prognosis is good for effective recovery. She has already experienced 50% reduction in her wrist pain, and 25% reduction in her neck pain and she is also likely to benefit from pain medicine injections by pain management in the myofascial trigger points." (R. 323)

On May 10, 2001, plaintiff began treatment with a pain management specialist, Dr. Cyrus Bakhit, whose impressions included neck and low back pain and carpal tunnel syndrome. Despite this impression of carpal tunnel syndrome, Dr. Bakhit's comprehensive initial evaluation noted normal grip strength and coordination, without sensory deficit in the upper extremities. (R. 420-22) Plaintiff saw Dr. Bakhit again on May 29, 2001, "for followup for her neck pain in association with headaches and shoulder discomfort." (R. 408) At that time, "[s]ensory and motor examination of the upper extremities did not reveal any significant abnormalities."

4

(R. 408) Plaintiff began a course of cervical epidural injections in June, 2001. In the June 14, 2001 note, Dr. Bakhit states that "[t]he patient has positive Tinel's and Phalen's sign bilaterally in the upper extremities."[1] (R. 405) Beginning in September, 2001, plaintiff was again seen at the Roanoke Orthopedic Center, and a left carpal tunnel release procedure was performed in October, 2001. At the first administrative hearing on December 19, 2002, plaintiff testified that she had carpal tunnel surgery on both of her wrists. (R. 655, 703)

While plaintiff argues that the ALJ erred by not appropriately considering plaintiff's carpal tunnel, the Commissioner notes that plaintiff's date last insured was June 30, 2001. Thus, in order to be eligible for disability insurance benefits, plaintiff must demonstrate that she was disabled by that date. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); Johnson v. Barnhart, No. 04-1963, slip. op. at 6-7 (4th Cir. Dec. 12, 2005); 20 C.F.R. §§ 404.101(a), 404.131(a).

Plaintiff's argument that the ALJ erred by not considering her carpal tunnel syndrome a severe impairment and, for that matter, by not considering this condition at all, (Pl.'s Br. 11), is not borne out by the record. While it is true that the ALJ's decision following remand does not address the carpal tunnel issue, that decision expressly incorporates the first decision, (R. 18), in which the ALJ exhaustively considered all of plaintiff's complaints, including those concerning her wrists. (R. 45-46, 48-49) In its remand order, the Appeals Council asked the ALJ to look into a number of specific issues, including issues of plaintiff's claimed mental impairment and residual functional capacity, including a supplemental assessment from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base and, if necessary,

---

[1] The Tinel and Phalen signs are used for diagnosis of carpal tunnel syndrome. See http://www.pubmed.gov (a service of the National Library of Medicine and the National Institutes of Health).

5

evidence from a medical expert to clarify the nature and severity of plaintiff's impairments. (R. 106) The second ALJ opinion addresses these issues.

Contrary to plaintiff's argument on appeal, the vocational expert ("VE") specifically considered the issue of her carpal tunnel condition, noting that while plaintiff would be precluded from doing jobs, such as cashier, which involve repetitive use of the upper extremities, other jobs that plaintiff could perform, such as receptionist, existed in significant numbers in the national economy. (R. 724-27, 736-37)

In short, plaintiff's argument that the ALJ failed to consider plaintiff's carpal tunnel condition ignores the record. The first administrative decision expressly considered the carpal tunnel issue, (R. 45-46, 48-49), and based on an exhaustive analysis of the medical records, the ALJ concluded that he "does not believe that the medical record, standing alone on findings, establishes a significant long term dysfunction of the hands." (R. 49) The second decision addresses those issues noted by the Appeals Council as well as new evidence submitted following remand.

It is clear from the record in this case that the ALJ considered plaintiff's claimed wrist impairment, and it is likewise clear that substantial evidence exists to support the ALJ's conclusion that plaintiff was not disabled by her combined impairments as of June 30, 2001, her date last insured. The ALJ did a thorough job of analyzing all of plaintiff's complaints and the medical records, and noted in his decision the fact that the treatment notes of one of her treating physicians, Dr. Ronald Goings, reflected his concern that plaintiff exaggerated her pain. (R. 20)

6

**IV**

The second issue raised is whether there is substantial evidence to support the ALJ's determination that plaintiff could perform a full range of light work. Plaintiff argues that this determination is inconsistent with the independent medical examination of Dr. Eckert, an orthopedist, done in March, 2001, at which time he indicated that plaintiff's "physical capabilities include sedentary work" with some driving assistance. (R. 319-324) The Commissioner argues, to the contrary, that the ALJ relied on the residual functional capacity assessment of Drs. Hays and Johnson, state agency physicians, dated September 17, 2001, stating that she meets the exertional limitations for light work. (R. 325-33) Another state agency physician, Dr. Donald Williams, concluded that plaintiff could perform light work with certain postural and environmental limitations. (R. 280-87) Likewise, the ALJ's decision that plaintiff has no severe mental impairment is supported by the Psychiatric Review Technique performed by a state agency physician at the same time. (R. 334-47)

In determining plaintiff's functional capacity for light work, the ALJ relied in part on the medical findings of Drs. Eckert and Bakhit during the relevant time period prior to plaintiff's date last insured of June 30, 2001. These findings show that plaintiff had normal sensation in nerve distribution, (R. 322), normal grip strength and normal motor strength in the upper extremities. (R. 420)

Later evaluations of plaintiff's medical condition are mixed, but are less relevant because they relate to the period after Ross' date last insured. Plaintiff argues that Dr. Bakhit's Physical Capabilities Evaluation dated March 7, 2002, which provided that plaintiff could perform 2 hours of standing and 2 hours of walking, does not meet the 6 hours necessary for the full range of light

7

work. (R. 467) Plaintiff also cites the 2004 medical assessment of Dr. Goings, which limited her to a total of 2 hours standing/walking and an occasional lifting/carrying limitation of only 10 pounds. (R. 623) On the other hand, the ALJ relied on the assessment of plaintiff's treating orthopedist, Dr. Robert C. Kime, III, based on an examination on January 28, 2003 which indicated mild cervical degenerative disc disease, no significant lumbar pathology and no overt signs of radiculopathy or myelopathy involving the upper or lower extremities. (R. 571-74) None of these evaluations, however, relates to the salient time period prior to June 30, 2001.

The ALJ carefully reviewed plaintiff's lengthy medical history and appropriately assessed the various medical source opinions as well as the credibility of the plaintiff. On this record, the ALJ's decision that plaintiff is not completely disabled as of June 30, 2001 is supported by substantial evidence of her condition as of that date.

V

The last issue is whether the ALJ's use of the Medical-Vocational Guidelines, Part 404, Subpart P, App. 2, commonly referred to as the "grids," to determine that plaintiff was not disabled is appropriate. The grids provide the Commissioner with administrative notice of classes of jobs available in the national economy for persons who have, among other things, certain disability characteristics such as strength or exertional limitations. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 200.00-204.00. The guidelines do not take into account nonexertional limitations such as pain, loss of hearing, loss of manual dexterity, postural and environmental limitations. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983). When nonexertional limitations such as these occur in conjunction with exertional limitations, the guidelines are not to be treated as conclusive. Roberts v. Schweiker, 667 F.2d 1143, 1145 (4th Cir. 1981); 20

C.F.R. Pt. 404, Subpt. P, App. 2 §§ 200.00(a), (d)-(e)(2); 20 C.F.R. § 404.1569. Rather, the regulations provide that in cases involving "combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in . . . Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2). In other words, where nonexertional limitations are established, it is error for the Commissioner to mechanically apply the grid rules to determine nondisability.

Ross argues that the ALJ erred in relying on the grids because there was substantial evidence of certain nonexertional impairments precluding their application. Also, Ross argues that the ALJ's reliance on the grids is inconsistent with the Appeals Council remand in this case which specified obtaining testimony from a vocational expert.

Ross contends that the record supports a finding of both postural and environmental nonexertional limitations. Ross bases this on the opinion of Dr. Williams, a state agency physician who performed a records review in 1999. As regards exertional limitations, Dr. Williams stated that Ross could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about 6 hours, sit about 6 hours, with an unlimited ability to sit and/or stand. (R. 281) Dr. Williams noted across the board occasional postural limitations, and that Ross should avoid concentrated exposure to extreme heat, cold, and poorly ventilated work conditions. (R. 282-84) Dr. Williams concluded by noting "[i]t appears that her problems have been enhanced by using (from Rx) pain relievers to which she may have become addicted. From the physical C/E it appears that she may have fibromyalgia but this should not prevent her from doing light work

activity." (R. 285) Ross also bases her argument for nonexertional limitations on a March 7, 2002 opinion from Dr. Bakhit noting environmental or working condition restrictions for heights, cold, dampness and high speed machinery. (R. 468)

The Commissioner counters by arguing that application of the grids was appropriate because the ALJ found that Ross retained the RFC for a full range of light work and did not have any nonexertional limitations. Also, the Commissioner argues that even if the ALJ had found that Ross had certain nonexertional limitations, they would not preclude the use of the grids because such limitations would not significantly erode the occupational base of jobs at the light exertional level.

The first issue, therefore, is whether any nonexertional limitations were established in this case. In both of his opinions, the ALJ found that there were no nonexertional limitations, thus allowing application of the grid rules. In each decision, the ALJ expressly considered one such limitation, Ross' claimed mental impairments, and concluded that before her insured status expired her claimed depression and anxiety did not more than minimally impact her functional capabilities and did not constitute a severe impairment. The ALJ also found that her symptoms alone did not give rise to limitations of functioning that would have required a finding that she had a severe impairment. In his assessment, the ALJ considered the fact that Ross did not seek any treatment for depression and anxiety until March, 2003, nearly two years after her insured status had expired, and expressly evaluated her claimed mental impairment under the criteria set forth for both affective and anxiety-related disorders. (R. 21, 40)

The ALJ's assessment was consistent with the Psychiatric Review Technique performed by state agency psychologist Hugh Tenison, dated September 17, 2001. (R. 334) In that

10

assessment, Dr. Tenison evaluated Ross under the criteria for both categories 12.04 Affective Disorders, and 12.06 Anxiety-Related Disorders, and found no severe impairment. Dr. Tenison noted only mild difficulty in maintaining concentration, persistence or pace. (R. 344) As such, the ALJ's findings as to the lack of any claimed mental impairment are supported by substantial evidence.

As regards the claimed postural limitations, the ALJ discredited them as being in conflict with the objective findings of Dr. Robert C. Kime, III, one of Ross' treating orthopedists. (R. 18) In his examination notes of January 28, 2003, Dr. Kime diagnosed Ross with mild cervical degenerative disc disease, but noted no significant lumbar pathology, no overt signs of radiculopathy or myelopathy involving either the upper or lower extremities, and no deficiency in upper extremity motor strength. (R. 573) There was no testimony at either administrative hearing concerning the occasional environmental limitations noted by Dr. Williams, nor do Ross' medical records from this period, including the notes of Drs. Widmeyer, Eckert and Bakhit, (R. 319-24, 361-64, 402-23), suggest any environmentally related functional limitations. On this record, therefore, substantial evidence supports the decision of the ALJ to discount any claimed nonexertional impairments as of June 30, 2001, the date last insured.

Further, the Commissioner argues that the claimed postural and environmental limitations are immaterial as they would not significantly affect the potential occupational base of unskilled, light work, relying on Social Security Ruling 83-14. That ruling clarifies how the grid rules provide a framework for decisions concerning persons who have both a severe exertional impairment and a nonexertional limitation or restriction. With regard to light work, this ruling states:

11

> [T]here are nonexertional limitations or restrictions that have very little or no effect on the unskilled light occupational base. Examples are inability to ascend or descend scaffolding, poles and ropes; inability to crawl on hands and knees; and inability to use the finger tips to sense the temperature or texture of an object. Environmental restrictions, such as the need to avoid exposure to feather, would also not significantly affect the potential unskilled light occupational base.

Ruling 83-14 concludes by noting that "[w]here it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected." There is no evidence in this case that the postural and environmental limitations claimed by Ross would have any impact on the occupational base confirming the application of the guidelines by the ALJ.

Finally, as the Commissioner argues and the ALJ emphasized in his decision, a residual functional capacity to perform light work necessarily includes the ability to do sedentary work. The vocational expert testified at the second administrative hearing on June 17, 2004 that even considering all of the limitations set forth in Dr. Goings' Medical Assessment of Ability to do Work-Related Activities (Physical) dated May 21, 2004, nearly three years past the date last insured, there was a sufficient number of sedentary jobs in the national economy which Ross could perform. (R. 727-29)

This conclusion mirrors the assessment of Dr. Ekert following his IME of Ross on March 12, 2001, where he concluded "[s]he can return to work, but not in the capacity at which she was before with the possibility of having to break up fights. . . . Ms. Ross' physical capabilities include sedentary work with assist [sic] for driving to work . . . ." (R. 324) This conclusion also is consistent with a records review done on August 20, 2001, just after the date last insured, by an orthopedic surgeon, William H. Mathews, M.D., who concluded that "[b]ased upon the records

12

reviewed at this time, the claimant should at least be able to return to work in a sedentary occupation with restrictions on repetitive use of the hands and upper extremities." (R. 444)

## VI

At the end of the day, there is no opinion in the record from any medical source that plaintiff was functionally incapable of performing any work as of June 30, 2001. The ALJ's opinion emphasizes that his finding that plaintiff could perform the full range of light work necessarily includes the ability to perform sedentary work. (R. 23, 51) Even the medical source opinions relied upon by the plaintiff, most of which are years after the date last insured, do not suggest that plaintiff is disabled from all work. There is no medical source statement indicating that plaintiff was incapable of working before the date last insured, and the thin medical record from that period in no respects supports such a finding. As such, there is substantial evidence to support the conclusion that plaintiff has not met her burden of proving that she was disabled on or before June 30, 2001.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

13

**ENTER:** This 22 day of February, 2006.

                                                                   /s/ Michael F. Urbanski
                                                                   Michael F. Urbanski
                                                                   United States Magistrate Judge